Albert T. Broadbent *vs.* Providence Gas Company.

JUNE 1, 1960.

Present: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

POWERS, J. This is an employee's petition to review a preliminary agreement under the workmen's compensation act on the ground that his incapacity has returned or increased. It was heard by a trial commissioner who found that the petition was not supported by a fair preponderance of the evidence and entered a decree denying and dismissing the same. The case is before us on the petitioner's appeal from a decree of the full commission affirming the decree of the trial commissioner.

The record discloses that on or about February 1, 1951, while in the employ of respondent, the petitioner sustained a compensable injury to his back and by reason thereof the parties entered into a preliminary agreement. He first consulted Dr. William V. Hindle on February 20 when the pain became so intense that it was difficult for him to work. Under Dr. Hindle's care, however, he continued to work until late in March when he became totally incapacitated. On March 26 he entered St. Joseph's Hospital for a myelogram. He remained for five days during which time he had traction. On April 6, 1951 the director of labor approved a preliminary agreement for total incapacity based on an average weekly wage of $53.78.

Thereafter he returned to his job and worked for awhile until he was again hospitalized in November 1951. The record shows a series of supplementary preliminary agree-

ments and suspension receipts reflecting a history of intermittent incapacities and work periods. He was receiving compensation for total incapacity when, in December 1953, he was notified by respondent that his employment was terminated for the reason that the advent of natural gas reduced the company's work force by some two hundred employees. In November 1955, while petitioner was still receiving compensation for total incapacity, he notified respondent that he had obtained employment with James C. Goff Company on September 15, 1955, and compensation was discontinued by a suspension agreement approved December 28, 1955. At that time he had been continuously unemployed since November 1953.

It appears that he worked for James C. Goff Company as a laborer and trucker's helper; that the work was not light; and that his compensation was $58 a week. There is some evidence that the work was seasonal and his employment temporary for that reason. Following the termination of his employment with James C. Goff Company in December 1955 petitioner made no effort to secure work with respondent, but did accept employment with the Rhode Island Hospital in February 1956. There he earned $40 a week and voluntarily left three months later for the reason that he could not get along on the wages he was earning.

In June 1956 he obtained employment with Manchester & Hudson Company as a truck driver's helper with an average weekly wage of $62. This employment lasted until December 1957 when, according to the testimony of his foreman, he was laid off for seasonal slackness. The petitioner, however, testified that he believed the layoff was related to his physical condition since two new men were hired. In June 1958 he was rehired by Manchester & Hudson Company as a truck driver's assistant at $62 a week. There is some evidence that the rehiring resulted from union intervention on his behalf. He was again laid off

on October 31 and testified that he did not know the reason. His foreman, however, testified that the layoffs were for seasonal slackness and that his work was satisfactory, contradicting petitioner's testimony that he limped considerably.

Doctor Hindle testified that he had personally attended petitioner continuously since February 20, 1951; that since then until the present he underwent three myelograms and had submitted to surgery twice; that he had last reported to respondent in May 1955; and that since that date his records showed thirty-eight visits by petitioner and twenty-three such visits included physical therapy and diathermic treatment.

Doctor Hindle further testified that as a result of the injury sustained on February 1, 1951 petitioner had become permanently partially disabled and diagnosed his present condition as a "post-laminectomy backache with a persistent sciatic neuritis." In direct examination he summarized the type of work petitioner should not attempt to perform, but in cross-examination testified as follows: "Q. And your opinion is that he can continue to do work at Manchester and Hudson if the employment opening is there, to do the same job? A. I think he could do it on the same basis that he's been going on while he has been working there, that from time to time there is going to be a greater degree of symptoms which will require sedation. Q. And sedation will take care of it, he can continue to do that work. He would be reverting to what he had been doing. A. Yes, sir."

The trial commissioner in his decision reviewed all the evidence before him and concluded that petitioner had never made a full medical recovery. He noted his low weekly wage at the time of the injury, commented on his subsequent weekly earnings with other employers, and found: "1. That petitioner has failed to prove by a fair preponderance of the testimony that his incapacity for

work either returned or increased on account of the effects of such injury. 2. However, I am satisfied that Dr. Hindle treated the petitioner for such injury and he is entitled to be paid. 3. Dr. Hindle is entitled to the sum of $50.00 for his appearance as a witness at this hearing, which I believe is fair and reasonable."

Thereafter a decree was entered conforming to the decision and from that decree petitioner appealed to the full commission. The decision of the full commission shows that it reviewed the record and findings of the trial commissioner and entered its decree affirming such decree. From that decree the employee has appealed to this court.

The petitioner assigns nine reasons of appeal which, however, encompass three principal contentions, namely, that the decision and the decree are against the law, the evidence and the weight thereof; that the commission erred in failing to award compensation after it had found, as did the trial commissioner, that the petitioner employee was permanently partially disabled; and finally that the commission erred in entering a decree not in conformity with its decision.

We shall first consider the last two contentions, since we understand they raise the same issue, namely, that on a finding of partial incapacity, the petitioner was entitled to partial or total compensation, citing *Gray* v. *Kagan*, 87 R. I. 264, 140 A.2d 269, and *D'Iorio* v. *United States Rubber Co.*, 88 R. I. 369, 148 A.2d 683. These cases are of no assistance to petitioner. They stand for the proposition that where there is a finding of partial *incapacity* the injured employee, subject to certain conditions set forth in general laws 1956, §28-33-18, may be awarded partial or total compensation according to the circumstances in any given case. However, there must first be established a partial incapacity to earn as distinguished from a disability resulting from an injury, which disability does not affect the employee's capacity to earn as much or more than he

was earning at the time of the injury. *Nunes* v. *Davol Rubber Co.*, 87 R. I. 271, 140 A.2d 272.

The record in the case at bar discloses that there is evidence from which the trial commissioner could find that, although petitioner is partially disabled, his disability has not impaired his capacity to earn wages equal to or greater than those he was earning at the time he was injured. The petitioner's second and third contentions are without merit.

The first contention, that the decision and the decree are against the law, the evidence and the weight thereof, is also lacking in merit. The issue here relates to the finding that petitioner failed to establish by a fair preponderance of the evidence that the disability from which he continues to suffer affects his earning capacity. It is well settled that the burden of proving decreased earning capacity rests upon the party alleging it. *Wareham* v. *United States Rubber Co.*, 73 R. I. 207.

There is evidence in the record that since the signing of the suspension receipt in December 1955 petitioner has been able to find work with two employers, the weekly wages for which were in excess of those he was earning while in the employ of respondent. This evidence coupled with the testimony of Dr. Hindle that if employment opportunities are available he is presently able to do such work negates petitioner's contention that his incapacity has returned. Further, there is evidence to support a finding that petitioner's subsequent employment with these two employers was terminated by seasonal layoffs and not because of his incapacity. Nor does petitioner offer any testimony to the effect that his deceased earnings with the Rhode Island Hospital resulted from incapacity occasioned by his injury. It may well be that if the employee had testified that he had taken the light work at the hospital because the condition of his back prohibited heavier work, the trial commissioner would have awarded him partial compensation for the period of his employment with the hospital.

It is equally well settled that a "negative conclusion drawn by the trier of the facts by way of a reasonable inference from other facts in evidence is a finding of fact," *DeFusco* v. *Ochee Spring Water Co.*, 84 R. I. 446, 449, and the rule that this court will not disturb findings of fact when supported by some competent evidence or reasonable inferences to be drawn therefrom is too well established to require citation of authority.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*John Quattrocchi, Jr.*, for petitioner.

*Hinckley, Allen, Salisbury & Parsons, Thomas J. Hogan*, for respondent.